# EXHIBIT 6

# LIBERTY UNIVERSITY

February 24, 2023

***Via Federal Express and Electronic Mail***

Jerry L. Falwell, Jr.
c/o Vernon E. Inge Jr.
Whiteford, Taylor & Preston LLP
Two James Center
1021 E. Cary Street, Suite 1700
Richmond, Virginia 23219
VInge@wtplaw.com

    Re:    Jerry L. Falwell Jr.'s Request for Review under the Supplemental Executive Retirement Plan

Dear Mr. Inge:

I am writing on behalf of the Executive Committee of Liberty University's Board of Trustees (the "Executive Committee"), which administers the Supplemental Executive Retirement Plan dated July 22, 2020 (the "SERP"). The Executive Committee has reviewed and considered the appeal and request for review submitted on behalf of Mr. Jerry L. Falwell, Jr. on December 28, 2022.

Under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Executive Committee is required to administer the SERP in accordance with its written provisions and terms as interpreted by the Executive Committee, the Plan Administrator. The Executive Committee has reviewed all the arguments, information, and materials submitted on behalf of Mr. Falwell in connection with his initial claim for benefits and request for review and received advice of counsel. For the reasons discussed below, the Executive Committee upholds its denial of Mr. Falwell's demand for payment of the SERP benefits pending final resolution by a court of competent jurisdiction of the pending dispute between Liberty University and Mr. Falwell.

**Background**

In the September 14, 2022 claim letter, Mr. Falwell demanded payment of his SERP benefit, which he contends was due on September 1, 2022 pursuant to Sections 4 and 5 of the SERP. According to Mr. Falwell's claim letter, he is entitled to SERP benefits as of September 1, 2022, the first of the month following the second anniversary of his termination, because he resigned on August 25, 2020 for what he asserted to be Good Reason (as defined in his Employment Agreement) and did not engage in Competitive Activity.

By letter dated December 13, 2022, the Executive Committee denied Mr. Falwell's demand for payment of SERP benefits as of September 1, 2022. The Executive Committee found that the legal dispute currently pending between Liberty University and Mr. Falwell in the Circuit Court of the City of Lynchburg, Virginia (Case Number CL21000354-00) warranted a delay of payment of any SERP benefit to Mr. Falwell until such time as the dispute has been fully and finally adjudicated by a court of competent jurisdiction and resolved by entry of a final order approving judgment or resolution by compromise. In making this determination, the Executive Committee principally relied on Sections 2 and 9(i) of the Trust Agreement, as well as Section 3(b) of the SERP, which expressly incorporates the Trust Agreement.

The Executive Committee also found that resolution of the pending dispute between Liberty University and Mr. Falwell would clarify key factual issues related to the circumstances surrounding Mr. Falwell's separation and the validity of and entry into his various employment contracts, including his July 1, 2019 Employment Agreement and the wholly-separate July 21, 2020 SERP. These factual issues could weigh on whether Liberty University amends its pending lawsuit against Falwell to exert a claim for recission of the SERP and Trust Agreement based on previously non-disclosed conduct by Falwell. The Executive Committee determined that further development of the factual record as to these issues was necessary for it to determine Mr. Falwell's eligibility for SERP benefits under Sections 4 and 5 of the SERP.

By letter dated December 28, 2022, Mr. Falwell appealed the denial of his payment demand and requested review of the same.

**Specific Reasons for Upholding the Claim Denial**

Mr. Falwell continues to assert an entitlement to a SERP benefit payment as of September 1, 2022 based on Sections 4 and 5 of the SERP.

Section 4 of the SERP provides:

> Payment of the Account. Subject to Paragraph 5 below, you (or, in the event of your death, your beneficiary or estate) will be entitled to receive the balance of the Account attributed to credits made pursuant to Paragraph 2 (together with the earnings related described in Paragraph 3) in a single lump sum payment on the first of the month following the earliest to occur of the following: your death, your Disability (as defined in your Employment Agreement), and the second anniversary of your termination of employment with the University for any reason other than Cause (as defined in your Employment Agreement).

Section 5 of the SERP provides:

> Forfeiture of the Account. Notwithstanding Paragraph 4 above, in the event that your employment is terminated for Cause (as defined in your Employment Agreement) or you engage in any Competitive Activity (as defined in your Employment Agreement) during the Non-Competition Period (as defined in your Employment Agreement), you will forfeit the right to the balance of the Account.

While Mr. Falwell contends that Section 4 dictates the timing of any payment, it is subject to Section 5, as he acknowledges. Section 5 restricts payment in the event of termination of employment for Cause as defined by the Employment Agreement. Mr. Falwell circumvents Section 5 by inaccurately contending that "Liberty does not and cannot dispute that Mr. Falwell has meet the requirements for eligibility to receive payment of the SERP benefits under the terms of the SERP – specifically, the lapse of two years following termination of employment, other than for Cause." The pending legal dispute between Liberty University and Mr. Falwell shows otherwise, and touches on the circumstances surrounding Mr. Falwell's separation and the validity of his various employment contracts, which might impact on Liberty University's potential remedy of recission.

The Executive Committee reviewed the August 25, 2020 press release cited in Mr. Falwell's appeal letter regarding the Liberty University Board's acceptance of Mr. Falwell's resignation and continues to acknowledge that Mr. Falwell resigned on August 25, 2020. But the Executive Committee finds that his resignation does not otherwise extinguish the potential existence of suppressed evidence of Cause that would otherwise support termination, and thus the ongoing litigation process may impact Mr. Falwell's ultimate eligibility for SERP benefits. Again, resolution of the pending litigation between Liberty University and Falwell will result in further development of the factual record related to the circumstances surrounding Mr. Falwell's separation.

For these reasons, the Executive Committee upholds the prior determination that it cannot properly construe Mr. Falwell's eligibility of SERP benefits absent further development of the factual record and resolution of the outstanding legal dispute between Liberty University and Mr. Falwell.

Mr. Falwell's request for review next challenges the Executive Committee's reliance on provisions in the Trust Agreement to delay payment of any SERP benefit. Mr. Falwell contends that the SERP, not the Trust Agreement, controls the timing of the payment. Liberty University agrees on the importance of the stand-alone SERP in the construction of Mr. Falwell's putative SERP benefits. As even Mr. Falwell acknowledges, however, the overall plan documents control the terms and conditions of benefit eligibility. The SERP itself references and incorporates the Trust Agreement SERP (§ 3(b).), making the Trust Agreement, too, a controlling plan governance document.

The Trust Agreement, which again is a plan governance document, provides for a delay of payment pending a dispute such as the litigation between Liberty University and Mr. Falwell. While Mr. Falwell contends that Sections 2 and 9 of the Trust Agreement are not relevant to his SERP benefits claim and does not authorize the Executive Committee to delay any SERP benefit payment, the Executive Committee finds otherwise after reviewing the SERP and Trust Agreement together.

Section 2 of the Trust Agreement governs when and how payments are made to Participants, such as Mr. Falwell. It provides in full:

**Section 2. <u>PAYMENTS TO PARTICIPANT AND BENEFICIARIES</u>**

(a)     The University may produce a schedule (the "Payment Schedule") that indicates the amounts payable in respect of the Participant (and his beneficiaries), that provides a formula or other instructions for determining the amounts payable, the form in which such amounts are to be paid (as provided for or available under the SERP), and the time of commencement for payment of such amounts. Except as otherwise provided herein, the Trustee shall make payments to the Participant and his beneficiaries in accordance with such Payment Schedule. Trustee shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the SERP and shall pay amounts withheld to the appropriate taxing authorities or determine that such amount have been reported, withheld and paid by the University. The benefits contemplated by the SERP and this Trust are intended to comply with Section 409A of the Code and are intended to be subject to a substantial risk of forfeiture under Section 457(f) of the Code through the date of payment.

(b)     Upon the receipt by the Trustee of (i) a written notice from the University, indicating that the SERP has been completely terminated and (ii) a Payment Schedule, indicating how payments shall be made as a result of the termination of the SERP, the Trustee shall pay to the Participant his account balance under the SERP in accordance with the terms of such Payment Schedule. Notwithstanding the foregoing, upon the termination of the SERP the University shall be entitled to make payment of benefits directly to the Participant or his beneficiaries in accordance with subsection (e) below.

(c)     The University hereby agrees that an Authorized Party (as defined below) shall have the exclusive responsibility, and the Trustee shall not have any responsibility or duty under this Trust Agreement for determining that the Payment Schedule is in accordance with the terms of the SERP and applicable law, including without limitation, the amount, timing or method of

payment and the identity of each person to whom such payments shall be made. The Trustee shall have no responsibility or duty to determine the tax effect of any payment or to see to the application of any payment.

(d) The entitlement of the Participant or his beneficiaries to the benefits under the SERP shall be determined by the University or such party as it shall designate under the SERP, and any claim for such benefits shall be considered and reviewed under the procedures set out in the SERP.

(e) The University may make payment of benefits directly to the Participant or his beneficiaries as they become due under the terms of the SERP. The University shall notify the Trustee of its decision to make payment of benefits directly to the Participant or his beneficiaries. If the University makes payments according to this subsection (e) the University shall make provision for the reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits pursuant to the terms of the SERP and shall pay amounts withheld to the appropriate taxing authorities. In addition, if the principal of the Trust, and any earnings thereon, are not sufficient to make payments of benefits in accordance with the terms of the SERP, the University shall make the balance of each such payment as it falls due. The Trustee shall notify the University where principal and earnings are not sufficient.

(f) University shall furnish Trustee with a written list of the names, signatures and extent of authority of all persons authorized to direct Trustee and otherwise act on behalf of the University under the terms of this Trust Agreement (an "*Authorized Party*"). The Trustee shall be entitled to rely on and shall be fully protected in acting upon direction from an Authorized Party (or a person that the Trustee reasonably believes to be an Authorized Party) until notified in writing by the University, as appropriate, of a change in the identity of an Authorized Party.

> (g) In accordance with the procedures mutually acceptable to the University and Trustee, all directions and instructions to Trustee from an Authorized Party, including but not limited to the Payment Schedule, shall be in writing, transmitted by mail or by facsimile or shall be an electronic transmission, provided Trustee may, in its discretion, accept oral directions and instructions and may require confirmation in writing ("*Authorized Instructions*").

This section makes clear that the Executive Committee, in its sole discretion as Plan Administrator and Authorized Party, has the authority to determine Mr. Falwell's eligibility for SERP benefits, as well as the timing of payment of any such benefits. The Trustee cannot make a payment absent specific instructions from the Executive Committee as an Authorized Party.

Section 9 of the Trust Agreement, which as you acknowledge outlines the Trustee's responsibilities—including its responsibility to make a SERP benefit payment—and provides for a delay of any such payment in the event of a dispute between Liberty University and a Participant. Specifically, Section 9(i) specifically provides:

> If (1) there is any disagreement or dispute in connection with the Trust or the subject matter hereof, **including without limitation any dispute between the Trustee, the University and/or the Participant**, or between the University, the Participant and/or any person not a party to the Trust or (2) there are adverse or inconsistent claims or demands upon, or inconsistent instructions to the Trustee, or (3) the Trustee in good faith is in doubt as to what action to take pursuant to the Trust, the Trustee may at its election refuse to comply with any such claims, demands or instructions, or refuse to take any other action pursuant to this Trust until (i) the rights of all persons involved in the dispute have been fully and finally adjudicated by a court of competent jurisdiction or the Trustee has resolved any such doubts to its good faith satisfaction; or (ii) all disputes have been resolved between the persons involved and the Trustee has received written notice thereof satisfactory to it from all such persons. Without limiting the generality of the foregoing, the Trustee may at its election

>   interplead the subject matter of this Trust Agreement with a court of competent jurisdiction, or commence judicial proceedings for a declaratory judgment, and the Trustee shall be entitled to recover from the University the Trustee's attorneys' fees, expenses and costs in connection with any such interpleader or declaratory judgment action.

Trust Agreement, Section 9(i) (emphasis added).

Reading these provisions together, the Executive Committee finds it has sole discretionary authority to determine Mr. Falwell's eligibility for and the timing of SERP benefits. Part of the Executive Committee's license is to determine if the resolution of "any" dispute between Falwell Jr. and Liberty University would be aided by a particular timing of payment of the SERP benefits. The agreement of the parties that good faith is integral to the Trust Agreement impacts on this determination. Factors like the unwillingness of Mr. Falwell to sit for deposition despite an agreement to be deposed, and a valid notice of deposition, weighs on the Executive Committee's belief that good faith is not present in Falwell's dispute resolution. The Trustee, of course, can only make such payments if directed by an Authorized Party, here the Executive Committee. The plan governance documents provide that any SERP payment may be delayed in event of a dispute between Liberty University and a Participant. The referenced litigation constitutes such a dispute. Therefore, the Executive Committee, as the Authorized Party, properly directed the Trustee not to make payment pending resolution of that dispute.

Given the pending dispute between Liberty University and Falwell and consistent with the provisions of the SERP and Trust Agreement, the Executive Committee, in its capacity as Authorized Party and Plan Administrator, upholds the prior determination that any SERP benefit payment must be delayed until such time as the dispute has been fully and finally adjudicated by a court of competent jurisdiction on entry of a final order approving judgment or resolution by compromise. The Executive Committee therefore upholds its denial of Mr. Falwell's demand for payment of SERP benefits as of September 1, 2022.

Pursuant to Section 7(a) of the SERP, in the absence of clear and convincing evidence that the Executive Committee acted arbitrarily and capriciously, any determination made by the Executive Committee with respect to the SERP will be final, binding, and conclusive.

**Additional Rights**

This letter constitutes a determination of Mr. Falwell's request for review under the SERP.

Mr. Falwell has the right to obtain, upon request and free of charge, copies of all documents, records, and other information relevant to his claim for benefits. Any such request should be in writing addressed to:

> Executive Committee of Liberty University's Board of Trustees
> Chairman Carroll Hudson
> c/o David Corry, Corporate Secretary
> 1971 University Blvd, Lynchburg, VA 24515
> dcorry@liberty.edu

Mr. Falwell also has the right to bring a civil action under ERISA Section 502(a) should he disagree with this decision on appeal.

                Sincerely,

                /s/ Carroll Hudson, Chairman
                On behalf of the Executive Committee