CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUL 31 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **JERRY L. FALWELL, JR.,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No.: 6:23-cv-11 |
| ) | |
| v. ) | |
| ) | |
| **LIBERTY UNIVERSITY, INC.,** *et al.*, ) | By: Hon. Robert S. Ballou |
| ) | United States District Judge |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Defendant Liberty University, Inc., ("Liberty") asks the court to apply the Colorado River abstention doctrine and dismiss or, in the alternative, stay Plaintiff Jerry L. Falwell, Jr.'s ("Falwell") action seeking payment of his retirement benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), in deference to a pending Virginia state court proceeding.[1] The Colorado River abstention doctrine provides the court discretion to stay or dismiss a suit in exceptional and limited circumstances where there is a substantially similar suit pending in state court. I do not find that such circumstances exist here; and I **DENY** the motion to dismiss or stay on the basis of abstention. Dkt. 8.

I.   **Background**[2]

Falwell has a long history of employment with Liberty. Most recently, he served as

---

[1] The parties filed cross-motions for summary judgment on Falwell's ERISA claim, which will be addressed at a later date.

[2] Liberty asks the court to take judicial notice of various documents attached to its motion to dismiss, asserting that the court can take judicial notice of publicly available publications in circulated newspapers, magazines and other periodicals. Def. Br., p. 4 n. 2; Dkt. 9. Falwell argues that it would be improper for the court to take judicial notice of publications as they are not incorporated into Falwell's complaint, nor are they "integral" to his complaint. Pl. Reply Br. p. 4 n 4., Dkt. 11. Generally, when deciding a motion to dismiss, the court will consider only the complaint, and any documents attached to the motion to dismiss that are "integral to the complaint and

President and Chancellor of Liberty, and was a member of the Board of Directors, until his employment ended on August 25, 2020.

In July 2019, Falwell and Liberty entered into a new employment agreement (the 2019 Employment Agreement), which continued his employment for an additional term of 11 years. The agreement included a severance benefit if Falwell resigned with "Good Reason" or was terminated without "Cause." [3] Liberty agreed to adopt a Supplemental Executive Retirement Plan to provide Falwell's retirement benefit. Dkt. 9-3, p. 82.

On July 22, 2020, Falwell and Liberty entered into a Supplemental Executive Retirement Plan benefit agreement (the "SERP"), which enumerated the terms of his supplemental retirement benefits. Dkt. 1-1. The SERP designated the Executive Committee of Liberty's Board of Trustees as the plan administrator. Id. at ¶ 7(a). The SERP provided that Liberty pay Falwell the retirement benefits in the account in a single lump payment on the first of the month following the earliest of Falwell's death or disability or the second anniversary of his termination of employment with Liberty "for any reason other than Cause." Dkt. 1-1 ¶ 4. Falwell forfeits the retirement benefits in the SERP if he is terminated for "Cause" or he engages in any competitive activity within two years after he leaves Liberty. Id. at ¶ 5.

---

authentic." Philips v. Pitt Cnty Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Walker v. S.W.I.F.T. SCRL, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (noting that to be considered integral to a claim, a document's "very existence, and not the mere information it contains, gives rise to the legal rights asserted"). "Pursuant to these principles, a court may properly consider ERISA plan documents on a motion to dismiss." Hooker v. Tunnell Gov't Servs., Inc., 447 F.Supp.3d 384, 392 (D. Md. 2020) (citing Clark v. BASF Corp., 142 F. App'x 659, 661 (4th Cir. 2005)). Further, this court may take judicial notice of Falwell's state court proceedings. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239–40 (4th Cir. 1989) (explaining that a federal court may take judicial notice of state court proceedings that directly relate to the issues pending in the federal court). I find it unnecessary to take judicial notice of the publications attached to the motion to dismiss, and for purposes of the abstention analysis consider Falwell's federal Complaint, Liberty's Second Amended Complaint and proposed Third Amended Complaint filed in state court, and the underlying ERISA plan documents, including the Supplemental Executive Retirement Plan, the Rabbi Trust Agreement and the 2019 Employment Agreement.

[3] The 2019 Employment Agreement defined the terms resignation for "Good Reason" and termination for "Cause." Dkt. 9-3.

Attached to the SERP is a Rabbi Trust Agreement (the "Rabbi Trust"), that establishes a grantor trust account which Liberty funds to pay the SERP benefits. Dkt. 9-4.  The SERP and Rabbi Trust agreements reflect that the parties elected to be governed by the Employee Retirement Income Security Act of 1974.

On August 24, 2020, Falwell resigned from Liberty without Cause and for Good Reason. Compl. ¶ 47, Dkt. 1.  The Executive Committee met on August 25, 2020 and accepted Falwell's resignation and recommended ratification to Liberty's full Board of Trustees. Id. ¶ 48. That same day, Liberty's Board of Trustees affirmed the decision of the Executive Committee to accept Falwell's resignation. Id. ¶ 49.

### A. State Court Action

In April 2021, Liberty filed suit against Falwell in the Circuit Court of the City of Lynchburg (the "State Court action") for claims arising out of Falwell's alleged actions during and after his employment.  Liberty has amended the complaint twice and requested leave from the State Court to file a third amended complaint. The Second Amended Complaint asserts claims against Falwell for: 1) breach of contract, alleging that he failed to preserve and return Liberty property, documents and information; 2) breach of employment contract for improperly classifying personal expenses as business expenses; 3) detinue; 4) breach of fiduciary duty, for failing to disclose ongoing extortion and threats against him while negotiating and entering into the 2019 employment agreement, retirement plan and severance; 5) statutory conspiracy and common law conspiracy for concealing the threats and extortion against him from Liberty; and 6) unjust enrichment. Dkt. 9-3, p. 32–44.   Particularly relevant to this case, Liberty alleges that Falwell breached his fiduciary duty to Liberty by negotiating the "walkaway" severance and SERP benefits in 2019 and 2020 while withholding pertinent information from Liberty.

3

The relief Liberty seeks in the State Court action includes compensatory and punitive damages, statutory attorneys' fees, pre- and post-judgment interest and an injunction prohibiting Falwell from retaining possession of property belonging to Liberty. Id., p. 44.

On April 25, 2023, Liberty filed a motion for partial summary judgment in the State Court action to establish, as a matter of law, that the SERP and Rabbi Trust "constitute a full contractual arrangement, standing separate from the 2019 Employment Agreement into which the parties also entered." Dkt. 12-1, p. 5.

In May 2023, Liberty sought leave in the State Court action to file a Third Amended Complaint to add a claim for rescission of the 2019 Employment Agreement and 2020 SERP. Dkt. 18-1.

### B. Federal Court Action

On September 14, 2022, Falwell submitted a claim for benefits under the SERP. Dkt. 1-3. On December 13, 2022, the Executive Committee of Liberty University's Board of Trustees denied Falwell's claim because it could not properly construe the terms of the SERP and Falwell's eligibility for SERP benefits while the State Court action is pending. Dkt. 1-4. The Executive Committee expected the State Court action to clarify "certain key factual issues related to the circumstances surrounding Mr. Falwell's separation and the validity of and entry into his various employment contracts," and relied upon a provision in the Rabbi Trust providing for delay of payment if there is "any disagreement or dispute in connection with the Trust." The Executive Committee determined that the State Court action was such a dispute and thus directed the Trustee to delay payment pending final resolution of the State Court action. Id.

Falwell appealed the denial of his claim on December 28, 2022 (Dkt. 1-5), and on February 24, 2023, the Executive Committee denied Falwell's appeal and request for review.

4

Dkt. 1-6.  The Executive Committee again based its denial of benefits on the uncertainty created by the State Court action, noting that it "touches on the circumstances surrounding Mr. Falwell's separation and the validity of his various employment contracts, which might impact on Liberty University's potential remedy of rescission." Dkt. 1-6.  The Executive Committee also reaffirmed its reliance on the Rabbi Trust provisions providing for a delay of payment pending the resolution of the dispute between Falwell and Liberty. Id.

In March 2023, Falwell filed this federal action against Liberty and the Executive Committee of the Board of Trustees for Liberty University, Inc.,[4] seeking payment of retirement benefits under the SERP pursuant to ERSIA provision 29 U.S.C. § 1132(a)(1)(B).[5]  Liberty moved to dismiss, or in the alternative, stay this action, arguing that abstention is appropriate under the Colorado River doctrine in favor of the pending State Court case.

Liberty asserts that abstention is warranted because rescission of the SERP is a potential remedy in the State Court action, and is in direct conflict with Falwell's request that this court order payment of benefits under the SERP.  Def. Br. p. 5, Dkt. 9. Liberty also points to a provision in the Rabbi Trust agreement providing that payment under the SERP may be withheld when there is a "dispute" between the parties.  Liberty argues that Falwell filed this federal lawsuit to force Liberty to disgorge a SERP payment before the facts are developed in the State Court action, and that this court risks forcing a payment under the SERP that may later be

---

[4] Liberty asserts that the Executive Committee of the Board of Trustees for Liberty University is not an independent legal entity, and thus, Liberty is the only real defendant in interest. Def. Br. p. 8, Dkt. 9. Falwell argues that the Executive Committee is the Plan Administrator under the SERP and is a proper and distinct party in this case. Pl. Br. Opp. p. 7, Dkt. 11. Generally, the property party defendant in an ERISA case is the "entity which holds the discretionary decision-making authority over the denial of ERISA benefits." Ankney v. Metropolitan Life Ins., 438 F.Supp.2d 566, 574 (D. Md. 2006) (citing cases). The Executive Committee is designated as the Plan Administrator under the SERP; however, if the Executive Committee is not an independent legal entity, the court assumes, without deciding, that Liberty is the appropriate party defendant in this case.

[5] Falwell's Complaint contained a second count in the alternative for Breach of Contract, which Falwell agreed to voluntarily dismiss. See Pl. Br. Opp. p. 1, Dkt. 11.

rescinded or determined inapplicable by the state court.

In response, Falwell argues that this case does not present "exceptional circumstances" warranting Colorado River abstention, and that none of the factors used to assess whether abstention is appropriate are met. Falwell asks the court to deny Liberty's Motion to Dismiss or Stay, and move forward with the Federal Court action determining his entitlement to payment of benefits under the SERP.

## II.     Analysis

### A. Colorado River Abstention

A district court has the duty to adjudicate those cases before it for which it has jurisdiction. "[I]n the usual case the federal courts *must* hear the cases that fall within their jurisdiction." McLaughlin v. United Va. Bank, 955 F.2d 930, 934 (4th Cir. 1991) (emphasis in original); see, e.g., Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817–18 (1976) (the duty to hear cases within the federal jurisdiction is "virtually unflagging"); Gordon v. Luksch, 887 F.2d 496, 497 (4th Cir. 1989) (abstention under Colorado River is appropriate "[o]nly in the most extraordinary circumstances"). "This is so even though the concurrent proceedings 'may appear to result in a duplication of judicial resources.'" Raloid Corp. v. O'Connor, No. 1:19cv283, 2019 WL 3228566 at *3 (E.D. Va. July 17, 2019) (quoting McLaughlin, 955 F.2d at 934).

Colorado River provides the court discretion to stay or dismiss a suit in exceptional and limited circumstances where there is a substantially similar suit pending in state court. Colo. River Water Conservation Dist. v. U.S., 424 U.S. 800, 818-20 (1976). Under Colorado River, a federal court may abstain in the interest of wise judicial administration when concurrent state and federal suits are parallel. Id. at 817. The state and federal suits do not have to be identical to be

parallel, but they must involve substantially the same parties and substantially the same claims. Robinson v. Am. United Life Ins. Co., No. 3:17cv1578, 2018 WL 3222799, at *2 (D.S.C. July 2, 2018) (citing AAR Int'l, Inc. v. Nimelias Enters, S.A., 250 F.3d 510, 517–20 (7th Cir. 2001)). Additionally, courts may only abstain where the state proceeding will dispose of all claims presented in the federal suit. Id.

Six factors guide a court's determination of whether "exceptional circumstances" exist warranting abstention under Colorado River in favor of a state court action:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

Great Am. Ins. Co. v. Gross, 468 F.3d 199, 207-08 (4th Cir. 2006). The Supreme Court has "declined to prescribe a hard and fast rule" to determine whether Colorado River abstention is appropriate. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15 (1983). The Colorado River factors are "to be applied in a pragmatic, flexible manner with a view to realities of the case at hand." Moses H. Cone Mem'l. Hosp., 460 U.S. at 21.

The threshold question is whether the federal and state suits are parallel. Chase Brexton Health Servs, Inc. v. Maryland, 411 F.3d 457, 463 (4th Cir. 2005). If parallel suits exist, then the court must carefully balance the other factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." Id. at 463.

Here, the state and federal actions are not sufficiently similar to constitute parallel proceedings. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." New Beckley Mining Corp. v. Int'l Union, United Mine Workers of

Am., 946 F.2d 1072, 1073 (4th Cir. 1991). The state court and federal action arguably involve parallel parties, as the parties to both actions are the same, with the exception of the Executive Committee of The Board of Trustees for Liberty University, Inc. named as a defendant in the federal court action.

Even where the parties "are virtually identical," the actions are not parallel if "the issues raised and remedies sought are not." New Beckley Mining Corp., 946 F.2d at 1074. Further, "a federal court may abstain under Colorado River only if it 'concludes that the parallel state-court litigation will be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties.' If there is any serious doubt that the state action would resolve *all* of the claims, 'it would be a serious abuse of discretion' to abstain." vonRosenberg, 849 F.3d at 168 (quoting Moses H. Cone, 460 U.S. at 28) (emphasis in original).

Here, while both actions arise from the same common core of facts, the claims alleged and remedies sought are vastly different. The federal action asserts a single claim for wrongful denial of benefits under ERISA, and seeks to recover Falwell's retirement benefits under the SERP. The State Court action involves multiple claims, including breach of contract, breach of fiduciary duty, detinue, conspiracy and unjust enrichment; and seeks various remedies, including compensatory damages for injury to Liberty's enrollment, adverse impact to the donor base, alleged disruption to faculty, harm to reputation, etc.; punitive damages; and an injunction to force Falwell to return certain property to Liberty.

Further, resolution of the State Court action will not necessarily resolve the claims in this federal ERISA case. The State Court action does not specifically address Falwell's entitlement to SERP benefits. Falwell's claim for benefits is governed by the SERP contract, which provides discretionary authority to the plan administrator (the Executive Committee of Liberty

University's Board of Trustees) to administer the agreement and determine whether Falwell is entitled to benefits. Dkt. 1-1, ¶ 7(a). There is no assertion by the parties, nor is there a contractual provision in the SERP, providing that a resolution of the issues in the State Court action would be binding on the plan administrator regarding its SERP benefits decision. Indeed, the plan administrator has broad discretion in deciding whether to award benefits. A jury verdict in the State Court action has no preclusive effect on the plan administrator and its determination of benefits under the SERP. That is, even if Falwell prevails in the state court action on all issues, the plan administrator retains discretion to conduct a separate analysis of the claim for benefits under the SERP and potentially deny the request for payment.

Liberty argues that abstention is warranted because the state court could potentially rescind the SERP. Liberty's argument that resolution of the State Court suit <u>may</u> impact the analysis or rights sought in the federal suit is insufficient to warrant abstention. "The question is …whether there is a 'substantial likelihood' that the foreign litigation 'will dispose of ***all*** claims presented in the federal case.'" <u>Robinson</u>, 2018 WL 3222799, at *3 (quoting <u>AAR Int'l. Inc.</u>, 250 F.3d at 518) (emphasis added). Here, the State Court action is not an adequate vehicle for the complete resolution of the issues between the parties in this federal ERISA case.

Accordingly, the State Court action as it currently exists is not parallel to the federal action because it does not involve the same claims, does not seek the same remedies, and may not resolve all of the issues raised in the federal case. See <u>vonRosenberg</u>, 849 F.3d at 168 ("[E]ven state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies."); <u>New Beckley Mining Corp.</u>, 946 F.2d at 1074 (noting that "some factual overlap does not dictate that proceedings are parallel"); <u>Al-Abood v. El-Shamari</u>, 217 F.3d 225, 232 (4th Cir. 2000) (finding that the state and federal

cases were not parallel because "although the parties in the two suits are substantially the same, the issues are not"); RJ Griffin and Co. v. Beach Club II Homeowner's Ass'n, Inc., 3 Fed. Appx. 43, at *2 (4th Cir. Feb. 7, 2001) (unpublished) (finding state and federal proceedings not duplicative where they do not raise the same issues or seek the same remedies); McLaughlin, 955 F.2d at 936 (finding that federal and state actions with similar claims that drew on common events were not parallel because they were not totally duplicative); Raloid, 2019 WL 3228566, at *3 (where state and federal claims arise out of common events, but federal action involves claims not asserted in the state litigation, the suits are not parallel).

  Even if I found the actions to be sufficiently parallel, exceptional circumstances must also exist for abstention to be permissible. vonRosenberg, 849 F.3d at 167. Significantly, a finding of exceptional circumstances requires "the 'clearest of justifications' ... to justify the *surrender* of ... jurisdiction." Moses H. Cone Mem'l Hosp., 460 U.S. at 25–26 (emphasis in original). An application of the abstention factors indicates that exceptional circumstances do not exist to warrant staying or dismissing this case. See vonRosenberg, 849 F.3d at 169 ("Exceptional circumstances allowing for abstention under Colorado River do not exist when state and federal cases are not duplicative, but merely raise similar or overlapping issues.")

  Briefly, the initial factor of whether the first court may assume *in rem* jurisdiction is irrelevant, as there is no real property at issue in this case. The second factor considers "the inconvenience of the federal forum." Colorado River Water Conservation Dist., 424 U.S. at 818. This factor does not favor abstention as both the federal and state courts are in the City of Lynchburg.

  Liberty asserts that the third factor of "the desirability of avoiding piecemeal litigation" favors abstention because allowing both suits to proceed will require discovery of the same

10

documents, depositions of the same persons, and briefing of the same matters, and both courts would reach results on key issues that could be inconsistent. Def. Br. p. 13, Dkt. 9.  However, in Gannett Co., Inc. v. Clark Construction Group, Inc., the Fourth Circuit held that "retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill-suited for resolution in duplicate forums." 286 F.3d 737, 744 (4th Cir. 2002). The Fourth Circuit has also emphasized "the general rule that our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." Chase Brexton, 411 F.3d at 462. Liberty does not identify a heightened concern beyond those inherent in parallel litigation. Def. Br. p. 13, Dkt. 9. See Paull Assoc. Realty, LLC v. Lexington Ins. Co., No. 5:13cv80, 2013 WL 5777280, at *5 (N.D.W. Va. Oct. 24, 2013) (potential for conflicting outcomes is insufficient to support abstention).

      The fourth factor is the order in which the courts obtain jurisdiction and the progress achieved in each action.  Liberty asserts that this factor strongly favors abstention as the state court action was filed two years before the federal action and has progressed through discovery and depositions. Def. Br. p. 14, Dkt. 9. Falwell disagrees, noting that Liberty amended the state court complaint twice; that the case is in the early stages of discovery with no jury trial date; and arguing that there can be no real expectation of substantial progress for years. Pl. Br. Opp. p. 10, Dkt. 11. Falwell asserts that the federal case is a straight-forward and expedited matter that will be resolved in a bench trial (if not on cross-motions for summary judgment) faster than the multi-faceted case pending in state court. Id. at p. 11.

      "[T]he Supreme Court instructed in Moses Cone that the order in which jurisdiction was obtained should 'not be measured exclusively by which complaint was filed first, but rather in

terms of how much progress has been made in the two actions.'" Davenport v. Robert H. Davenport, D.D.S., M.S., P.A., 146 F. Supp. 2d 770, 781 (M.D.N.C. 2001) (quoting Moses Cone, 460 U.S. at 21). Considering the progress in the State Court action, Liberty's recently filed motion for leave to file a third amended complaint, and the pending summary judgment motions in this action, I find that this factor does not strongly favor abstention.

The fifth factor is whether state or federal law provides the rule of decision on the merits. Falwell's ERISA claim for benefits under 29 USC § 1132(a)(1)(B) is governed by federal substantive law. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987) ("[A]ll suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans [should] be treated as federal questions governed by § 502(a)."). Indeed, ERISA supersedes all state laws insofar as they "relate to" an ERISA plan. 29 U.S.C. § 1144(a).

Liberty argues that state law provides the rule of decision to "key issues" underlying the ERISA claim. Def. Br. p. 14, Dkt. 9. Liberty also acknowledged that it seeks to use discovery in the State Court action to bolster its claim that Falwell is not entitled to benefits under the SERP. "Generally, in ERISA cases, the court's review is limited to the administrative record," and discovery outside of that record is not permitted. Helton v. AT&T Inc., 709 F.3d 343, 352 (4th Cir. 2013). Liberty is unabashedly attempting to use the state court discovery process to conduct fact-finding outside of the administrative record in an effort to unwind the SERP contract and avoid paying benefits under an ERISA plan. Liberty's request that this court abstain to allow it to engage in discovery in state court conflicts with the clear congressional intent of the ERISA statute to permit the nationally uniform administration of employee benefit plans through the federal courts. See Pilot Life Ins. Co., 481 U.S. at 54 ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be

completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."). Abstention would allow Liberty to conduct wide-ranging discovery in state court proceeding which involves many issues irrelevant to whether Falwell is entitled to the agreed-upon SERP retirement benefits. That is not the proper use of Colorado River abstention, and thus, this factor weighs heavily against abstention.

Sixth, the court must consider the adequacy of the state proceeding to protect the parties' rights. This factor weighs against abstention "where an important federal right is implicated and state proceedings may be inadequate to protect the federal right, or [to justify abstention] where retention of jurisdiction would create 'needless friction' with important state policies." Gannett Co., Inc., 286 F.3d at 746 (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 717–18 (1996)). Congress intended § 502(a), 29 U.S.C. § 1132(a), to be the exclusive remedy for rights guaranteed under ERISA. Pilot Life, 481 U.S. at 52. Liberty has not shown that the exercise of this court's jurisdiction would result in needless friction with important state policies. Liberty argues that the "federal law of ERISA may never in fact become applicable to Falwell's monetary demands if Liberty's state court matter proceeds to the recission of Falwell's SERP." Def. Br. p. 15, Dkt. 9. This potential conflict is insufficient. Nothing in the record suggests that the federal forum is inadequate to protect the rights of the parties, or that the state forum is more adequate to protect such rights. To the extent Liberty argues that allowing this litigation to proceed will undermine the state court ruling because issues litigated here may have an issue preclusive effect in the state court action, this argument is unpersuasive. That a federal action may have an issue preclusive effect in a pending state action is not a sufficient reason to abstain. Raloid Corp. v. O'Conner, 2019 WL 3228566, at *7.

Courts in the Fourth Circuit generally consider an additional factor: whether the filing of

the parallel suit was vexatious or reactive in nature. See Glover v. Hryniewich, No. 2:17cv109, 2017 WL 4399550, at *3 (E.D. Va. Oct. 3, 2017). Liberty argues that Falwell filed this federal lawsuit to force Liberty to disgorge a SERP payment before the facts are developed in the State Court action. The ERISA plan documents reflect that Falwell sought payment under the SERP after the two-year contractual period expired, appealed Liberty's denial of his claim for benefits, and exhausted his administrative remedies before bringing this federal ERISA claim. Liberty's prior pending suit in state court alone does not transform Falwell's federal claim for benefits into a "vexatious" filing where Falwell had to wait to bring this action until after the ERISA right of action for the SERP benefits became ripe.

Considered together, the Colorado River factors do not support a finding of extraordinary circumstances warranting abstention in favor of the state court action.

### III.     Conclusion

Recognizing this court's "virtually unflagging" obligation to exercise its jurisdiction, Colorado River, 424 U.S. at 817, I decline to abstain from or stay this federal ERISA action in favor of the pending state court action. Liberty's motion to dismiss or stay on the basis of abstention (Dkt. 8) is **DENIED**. This matter will proceed on the pending cross-motions for summary judgment.

    Entered:  July 31, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge